# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 9, 2023

Lyle W. Cayce
Clerk

No. 22-10269

ODELL EDWARDS, *individually and as representative of* THE ESTATE OF
JORDAN EDWARDS, DECEASED,

*Plaintiff—Appellant*,

*versus*

THE CITY OF BALCH SPRINGS, TEXAS,

*Defendant—Appellee*.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:17-CV-1208

---

Before ELROD, HAYNES, and WILLETT, *Circuit Judges*.

DON R. WILLETT, *Circuit Judge*:

The City of Balch Springs Police Department hired an officer who a jury later convicted of murdering a teenage boy while on duty. Edwards (the boy's father) sued the City under 42 U.S.C. § 1983. The district court granted the City's motion for summary judgment, reasoning that the department's use-of-force policy was constitutional, and also that Edwards's training, supervisory, and disciplinary theories of liability lacked factual support. We follow a different line of reasoning in some respects, but we

No. 22-10269

agree that the district court reached the result that our precedent requires, and we therefore AFFIRM.

I

Jordan Edwards attended a house party in Balch Springs, Texas on the evening of April 29, 2017. Jordan's two brothers and two friends also attended, as did several other teenagers. Officers Roy Oliver and Tyler Gross of the Balch Springs Police Department responded to the house after a 9-1-1 call reported underage drinking. At that point the party dissolved, and the five boys returned to their car.

While Officers Oliver and Gross were in the house, gunfire erupted across the street. The officers heard the shots and ran outside toward the sound. The boys, too, heard the shots from their car. Vidal Allen, one of Jordan's brothers, was behind the wheel. He tried to drive *away* from the shots, but a vehicle was blocking the road. So he reversed the car—moving temporarily *toward* the shots, but ultimately aiming for and moving toward an intersection that offered an alternate route to escape the area. Gross yelled for the car to stop, but Vidal continued in reverse, reached the intersection, put the car in drive, and then drove forward and away from the shots.

Oliver recounts that the car then accelerated "at/by" the officers and that Gross was "extremely close" to the boys' car. Gross struck and shattered the car's rear passenger window, and less than half a second later, Oliver fired his first of five shots. One of those bullets struck Jordan in the head, killing him. Edwards contends that there was no immediate risk of harm to anyone when Oliver opened fire. He also asserts that Oliver shot at the car's rear—both while the car was driving away from the officers and after it had passed them.

No. 22-10269

Three days later, the City fired Oliver. A Texas jury found Oliver guilty of murder, and the Texas Court of Appeals affirmed that conviction.[1] The Court of Criminal Appeals of Texas granted Oliver's petition for discretionary review but later dismissed it as improvidently granted.[2] Oliver was sentenced to fifteen years in prison.

Meanwhile, Edwards (who is Jordan's father) filed a civil suit against both Oliver and the City under 42 U.S.C. § 1983. Oliver moved for summary judgment based on qualified immunity, but the district court denied that motion, and this court affirmed.[3] Likewise, the City moved to dismiss, arguing that Edwards had failed to state a municipal-liability claim. The district court also denied that motion. At various times the case featured additional plaintiffs, but those individuals have since settled their claims. Other theories of relief (beyond § 1983) were presented below but are not relevant to this appeal.

After discovery closed, the City moved for summary judgment, urging that Edwards had failed to present evidence sufficient to establish the necessary elements of a § 1983 claim for municipal liability. The magistrate judge entered findings and conclusions recommending that the district court grant the City's motion because "the City's use-of-deadly-force policy . . . is constitutional" and "was not the moving force of Oliver's conduct," and because "Edwards has not raised a fact question as to whether the City was deliberately indifferent with respect to his failure-to-supervise or -discipline claim." The district court accepted the magistrate's findings, conclusions,

---

[1] *Oliver v. State*, No. 05-18-01057-CR, 2020 WL 4581644, at *1 (Tex. App.—Dallas Aug. 10, 2020, pet. dism'd).

[2] *Oliver v. State*, No. PD-0845-20, 2022 WL 2240200, at *1 (Tex. June 22, 2022).

[3] *See Edwards v. Oliver*, 31 F.4th 925, 927 (5th Cir. 2022).

No. 22-10269

and recommendation, and it granted the City's motion. Edwards timely appealed.

## II

This district court had jurisdiction under 28 U.S.C. § 1331. That court granted and certified as final a partial summary judgment dismissing all of Edwards's claims against the City (even though some of Edwards's civil claims are still pending against Oliver). We have appellate jurisdiction under 28 U.S.C. § 1291.[4] We "review summary judgments *de novo*, applying the same standards as the district court."[5] Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6]

## III

A plaintiff may sue a municipality for a violation of federal rights that occurs "under color of any statute, ordinance, regulation, custom, or usage."[7] To succeed, the plaintiff must identify a federal right that was violated "pursuant to an official municipal policy."[8] This claim, also known as a *Monell* claim, requires "(1) an official policy (2) promulgated by the municipal policymaker (3) [that] was the moving force behind the violation of a constitutional right."[9] To establish the third element, the plaintiff must

---

[4] *See* Fed. R. Civ. P. 54(b) ("[W]hen multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, . . . parties[.]").

[5] *Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, 37 F.4th 1078, 1083 (5th Cir. 2022).

[6] Fed. R. Civ. P. 56(a).

[7] 42 U.S.C. § 1983.

[8] *Liggins v. Duncanville*, 52 F.4th 953, 955 (5th Cir. 2022) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.,* 436 U.S. 658, 691 (1978)).

[9] *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

No. 22-10269

show either that "'the policy itself was unconstitutional'" or that "'[the policy] was adopted with deliberate indifference to the known or obvious fact' that a specific constitutional violation would follow."[10] A plaintiff who alleges that a policy was one of failure-to-train must show that the failure "'constituted deliberate indifference to the plaintiff's constitutional rights.'"[11]

Edwards argues that the City's use-of-force policy is facially unconstitutional as a matter of law. He also argues that factual questions remain regarding an alleged policy under which the City failed to train, supervise, or discipline its officers. We disagree on both fronts.

A

If an official policy "'itself violates federal law, or directs an employee to do so,'"[12] then the policy is facially unconstitutional, and "it necessarily follows . . . that a constitutional violation will most likely occur."[13] When that happens, the facially unconstitutional policy's mere existence satisfies the moving-force requirement that is *Monell*'s third element.[14] On the other hand, a "facially innocuous policy will support liability" only if "it was promulgated with deliberate indifference to the known or obvious

---

[10] *Liggins*, 52 F.4th at 955 (quoting *Webb v. Town of Saint Joseph*, 925 F.3d 209, 219 (5th Cir. 2019)).

[11] *Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 482 (5th Cir. 2021) (quoting *Pena v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018)); *see Shumpert v. City of Tupelo*, 905 F.3d 310, 317 (5th Cir. 2018) (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

[12] *Doe v. United States*, 831 F.3d 309, 318 (5th Cir. 2016) (emphasis omitted) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404–05 (1997)).

[13] *Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)).

[14] *See id.*

No. 22-10269

consequences that constitutional violations would result."[15] However, we know of no cases from this circuit explaining how to determine whether a formal, written policy "itself violates federal law"[16] such that it is "unconstitutional on its face" rather than "facially innocuous" under *Monell*'s moving-force element.[17] Indeed, a district court recently remarked that it was not "aware" of a "guide for analyzing a city's written policy" or of any "caselaw that provides a roadmap for such analysis."[18]

The Supreme Court has held that "recovery from a municipality is limited to acts that are, properly speaking, acts of the municipality—that is, acts which the municipality has *officially sanctioned or ordered*."[19] And that Court has indicated that a policy is not facially unconstitutional just because it commits some decisions to an officer's discretion, for "[i]f the mere exercise of discretion . . . could give rise to a constitutional violation, the result would be indistinguishable from *respondeat superior* liability."[20]

Following that precedent, some of our sister circuits have held that a written policy cannot be facially unconstitutional solely due to instructions that it leaves out. For example, the Eighth Circuit has held that a policy that

---

[15] *Balle v. Nueces Cnty.*, 952 F.3d 552, 558 (5th Cir. 2017) (internal quotation marks and citation omitted).

[16] *Doe*, 831 F.3d at 318 (emphasis omitted) (internal quotation marks omitted).

[17] *Burge*, 336 F.3d at 370.

[18] *Roundtree v. City of San Antonio*, No. SA-18-CV-01117-JKP-ESC, 2022 WL 903260, at *7 (W.D. Tex. Mar. 28, 2022).

[19] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) (emphasis added) (internal quotation marks omitted); *see also id.* at 483 (plurality opinion) ("We hold that municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.").

[20] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988).

No. 22-10269

"fails to give detailed guidance that might have averted a constitutional violation by an employee" is not thereby unconstitutional.[21] Likewise, the Ninth Circuit has held that a policy's "failure to implement procedural safeguards to prevent constitutional violations" is an "omission" and therefore cognizable only under the deliberate-indifference standard.[22] And the Eleventh Circuit has held that "the deliberate indifference standard applies to section 1983 claims basing liability on a municipality's actions in failing to prevent a deprivation of federal rights."[23]

We agree. An official, written policy is "itself" unconstitutional only if it affirmatively allows or compels unconstitutional conduct.[24] But where such an official, written policy merely commits some decisions to an individual officer's on-the-scene discretion, or gives some detailed instructions while omitting others, then that policy satisfies *Monell*'s moving-force element only if those features stem from the policymaker's deliberate indifference.

Edwards argues that the City's policy is facially unconstitutional because it contains "no *immediacy* requirement necessary to justify an officer's use of deadly force" and because it calls "for an officer to use the

---

[21] *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 392 (8th Cir. 2007); *see also Moyle v. Anderson*, 571 F.3d 814, 818 (8th Cir. 2009) ("A policy which does not '*affirmatively sanction*' unconstitutional action, and which instead relies on the discretion of the municipality's employees, is not an unconstitutional policy." (emphasis added) (quoting *Seymour v. City of Des Moines*, 519 F.3d 790, 800 (8th Cir. 2008))).

[22] *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012).

[23] *Davis v. DeKalb Cnty. Sch. Dist.*, 233 F.3d 1367, 1376 (11th Cir. 2000) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291 (1998)).

[24] *Doe*, 831 F.3d at 318 (emphasis omitted) (internal quotation marks omitted).

No. 22-10269

officer's own *subjective beliefs* in determining whether deadly force was justified." Neither argument succeeds.

1

When a suspect "'poses no *immediate* threat to the officer . . . , the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.'"[25] Edwards says that this language reflects a universal "immediacy" requirement that applies to any exercise of deadly force. From that initial premise, he argues that the City's use-of-force policy unconstitutionally "permits officers to use deadly force when no immediate threat of harm actually exists."

Edwards's first premise is undoubtedly correct, but his argument fails on the second. The City's use-of-force policy provides (emphases added):

> Law enforcement officers are authorized to use deadly force . . . [t]o protect the officer or others from what is reasonably believed to be a threat of death or serious bodily injury.
>
> [Except that] . . . .
>
> 2.  Firearms shall not be discharged at a moving vehicle in an *attempt to disable* the vehicle.
>
> 3.  . . . [O]fficers threatened by *an oncoming vehicle* should attempt to move out of its path, if possible, instead of discharging a firearm at it or any of its occupants. However, if an officer reasonably believes that a person is *immediately threatening* the officer or another person with deadly force by means of a vehicle, an officer may use deadly force against the driver of the vehicle.

---

[25] *Cole v. Carson*, 935 F.3d 444, 453 (5th Cir. 2019) (emphasis added) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)).

The district court held that both exceptions prohibit the shots that Oliver fired. Under this reasoning, the City is off the hook—either because the second exception says that "[f]irearms shall not be discharged at a moving vehicle," or because the third exception includes an immediacy requirement.

Edwards argues that the district court invoked these exceptions only after it improperly resolved questions of fact. As for the second exception, Edwards argues that there is a fact question because "Oliver's justification for shooting at the vehicle . . . was not to disable the vehicle . . . , but because he believed that a shot had been fired from the vehicle." Edwards also says that there is a fact issue as to the third exception because the car was not "oncoming" but rather was "headed away from the officers" when Oliver opened fire. Therefore (according to Edwards), because the second and third exceptions do not apply, the policy's "overriding 'use of deadly force' authorization" governs the shooting. But because the general authorization "is not at all constrained by immediacy," the policy is "unconstitutional on its face." So the argument goes.

Edwards's argument errs, but not necessarily for the reasons that the district court gave. Even if the Constitution always requires immediacy, and even if the policy's second and third exceptions do not apply, the policy's general use-of-deadly-force authorization does not affirmatively allow or compel officers to use deadly force even when immediacy is lacking. Rather, the general authorization is silent about immediacy. That silence permissibly commits judgments about immediacy to each officer's own "discretion."[26]

Conceptually, too, Edwards's argument falters. For example, his complaint alleges that "the [City's] use-of-force policy is unconstitutional because it authorizes officers to use deadly force . . . *without instructing* [*them*]

---

[26] *Praprotnik*, 485 U.S. at 126.

that the threat must be immediate." If omissions such as these render a policy facially unconstitutional, then it is hard to see what room is left for failure-to-train claims that must satisfy the "deliberate indifference" standard.[27] On the contrary, a written policy is not facially unconstitutional just because it leaves out "detailed guidance that might have averted a constitutional violation."[28] If it were otherwise, a use-of-force policy would be facially constitutional only if it recited every jot and tittle of the applicable caselaw. Surmounting that logistical hurdle would produce a behemoth free of any practical use—less a policy than a treatise. Edwards's "immediacy" argument is therefore no basis for reversal.

2

Edwards's "subjectivity" argument fares no better. The Fourth Amendment prohibits "objectively unreasonable" force.[29] An "officer's reasonableness in using force . . . is analyzed under an *objective standard* 'in light of the facts and circumstances confronting the officer, without regard to his or her underlying intent or motivation.'"[30] Permissible factors under this standard include "the severity of the crime at issue, whether the suspect poses a threat to the safety of the officers or others, and whether the suspect is actively resisting arrest."[31] "[T]he 'threat-of-harm factor typically predominates the analysis when deadly force has been deployed.'"[32]

---

[27] *See Balle*, 952 F.3d at 558.

[28] *Szabla*, 486 F.3d at 392.

[29] *Hutcheson*, 994 F.3d at 480; U.S. Const. amend. IV.

[30] *Mason v. Lafayette Par.*, 806 F.3d 268, 275 (5th Cir. 2015) (emphasis added) (alterations accepted) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

[31] *Crane v. City of Arlington*, 50 F.4th 453, 463 (5th Cir. 2022) (citing *Graham*, 490 U.S. at 396).

[32] *Id.* at 463 (quoting *Harmon v. City of Arlington*, 16 F.4th 1159, 1163).

No. 22-10269

The City's use-of-force policy requires that:

1. [I]n determining the necessity for force and the appropriate level of force, officers shall evaluate each situation in light of the known circumstances, including, but not limited to, the seriousness of the crime, the level of threat or resistance presented by the subject, and the danger to themselves and the community.

2. In evaluating the reasonable application of force, officers may consider their own age, size, strength, and skill level with department weapons, state of health, and the number of officers opposing the number of suspects.

Edwards argues that this policy is unconstitutional because it allows an officer to rely on "subjective criteria," "subjective beliefs," and "subjective evaluations." Specifically, Edwards says that the policy is "unconstitutional on its face" because it "would justify the use of deadly force by a younger, more inexperienced officer . . . , even if the situation did not objectively call for the use of deadly force." This argument breaks down because the policy excerpts that Edwards relies on set forth only objective factors—that is, "the facts and circumstances confronting the officer."[33] While Edwards asserts that the policy would allow deadly force anytime an officer "felt threatened by someone," he does not connect that assertion to any language from the policy. On the contrary, a close look at the policy reveals that each factor is objective.

Edwards does not dispute that the first paragraph contains only objective factors. Nor could he. It is beyond debate that officers may consider factors such as "the seriousness of the crime, the level of threat or resistance presented by the subject, and the danger to themselves and the

---

[33] *Mason*, 806 F.3d at 275 (internal quotation marks and citation omitted).

community."[34] Instead, Edwards takes issue with the factors that appear in the second paragraph. But these factors are likewise objective "circumstances confronting the officer"[35]—obviously so for "age, size, . . . and the number of officers opposing the number of suspects." The remaining three factors may not as readily reduce to numerical certainty, but that does not mean that they lack objectivity. "Strength," "skill level," and "state of health" are all questions of fact, not feeling. Each of these inquiries relates to the predominant factor, which is "whether the suspect poses a threat to the safety of the officers."[36] It is true that some officers are stronger than others, or more proficient with weapons, but Edwards errs by equating those objective physical variances with the subjective mental appraisals that the Constitution prohibits.

Because the policy does not affirmatively allow or compel an officer to use deadly force based solely on the officer's own "underlying intent or motivation,"[37] Edwards's argument from subjectivity fails.

B

"[A] municipality's failure to train its police officers can without question give rise to § 1983 liability."[38] To succeed, the plaintiff must demonstrate that: "(1) the city failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3)

---

[34] *See, e.g.*, *Crane*, 50 F.4th at 463 (quoting *Graham*, 490 U.S. at 396).

[35] *Mason*, 806 F.3d at 275 (internal quotation marks and citation omitted).

[36] *Crane*, 50 F.4th at 463.

[37] *Mason*, 806 F.3d at 275 (internal quotation marks and citation omitted).

[38] *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009).

No. 22-10269

the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights.'"[39] "[F]or liability to attach based on an inadequate training claim, a plaintiff must allege with specificity how a particular training program is defective."[40] Deliberate indifference is a "high standard" that requires "a complete disregard of the risk that a violation of a particular constitutional right would follow the decision."[41]

"To show deliberate indifference, a plaintiff normally must allege a pattern of similar constitutional violations by untrained employees."[42] "A pattern requires *similarity and specificity*; prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question."[43] Because deliberate indifference typically requires a pattern, "we have stressed that a single incident is usually insufficient to demonstrate deliberate indifference."[44] The "'single incident exception' is

---

[39] *Pena*, 879 F.3d at 623 (additional parentheses added) (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001)).

[40] *Trammell v. Fruge*, 868 F.3d 332, 345 (5th Cir. 2017) (quoting *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010)).

[41] *Liggins*, 52 F.4th at 955 (alterations adopted) (internal quotation marks and citations omitted ).

[42] *Henderson v. Harris Cnty.*, 51 F.4th 125, 131 (5th Cir. 2022) (internal quotation marks and citations omitted). *Compare Fuentes v. Nueces Cnty.*, 689 F. App'x 775, 778 (5th Cir. 2017) (affirming summary judgment for the county because the plaintiff failed to provide evidence of prior incidents involving the same specific wrongful action—failure to adequately monitor an inmate on suicide watch), *with Bond v. Nueces Cnty.*, No. 20-40050, 2022 WL 4595000, at *6–7 (5th Cir. Sept. 30, 2022) (reversing order denying leave to amend as futile because, in the proposed amended complaint, the plaintiff cited twenty-three examples of prior incidents involving the same specific wrongful action—failure or refusal to provide timely medical attention).

[43] *Peterson*, 588 F.3d at 851 (emphasis added) (alterations adopted) (internal quotation marks and citations omitted).

[44] *Liggins*, 52 F.4th at 956 (alterations adopted) (internal quotation marks and citations omitted).

No. 22-10269

extremely narrow,"[45] and as an exception to the pattern requirement, it "is generally reserved for those cases in which the government actor was provided no training whatsoever."[46]

1

Edwards argues that the City "failed to provide . . . appropriate remedial force training." He relies on a few examples to establish what he sees as a factual question regarding a pattern of violations: (1) Oliver previously "slamm[ed] Luis Medina, Jr. to the ground . . . while Medina was experiencing an epileptic seizure," and (2) a different officer previously "sho[t] an unarmed male" and "assault[ed] an inmate who he claimed verbally assaulted him." Edwards also points to evidence of "two other instances in which an officer shot at a moving vehicle."

These examples lack "similarity and specificity," and therefore they do not "point to the specific violation in question."[47] Oliver's prior body-slam is dissimilar to this case because it did not involve a moving vehicle. So too for the different officer's prior shooting and prior assault. While Edwards does point to some scant evidence for two shootings that did each involve a vehicle, he does not describe those instances at all—indeed, he does not identify any evidence that the shootings even violated the department's use-of-force policy. Even for a city as small as Balch Springs, these "isolated instances" of previous departures from the overall use-of-force policy cannot

---

[45] *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010); *see Peterson*, 588 F.3d at 850–51 ("It is thus clear that a plaintiff must demonstrate a 'pattern of abuses that transcends the error made in a single case.'") (quoting *Piotrowski*, 237 F.3d at 582); *see also Mason*, 806 F.3d at 281 (holding that plaintiff could not show *Monell* liability because he had "not provided evidence of problems with [the City's] disciplinary and investigatory procedures outside the present case").

[46] *Pena*, 879 F.3d at 624.

[47] *Peterson*, 588 F.3d at 851 (5th Cir. 2009).

establish a pattern of deliberate indifference.[48] As a result, these examples are not enough to satisfy the causality standard that is *Monell*'s third element. Edwards's failure-to-train claim therefore falls short.

2

Edwards also argues that he raised a fact issue concerning "the City's failure to supervise or discipline." He describes the "main component" of that claim as follows: "[T]he City lacked any sort of system to identify and track use of force incidents by their officers and, by failing to do so, created an atmosphere that condoned and ratified reckless and dangerous behavior by its police officers." This allegation does not relieve Edwards of his burden to establish "a pattern of similar constitutional violations" to show deliberate indifference.[49] Edwards responds by pointing to the irony that arises if he must identify violations that the City refuses to track. But this argument confuses *tracking* and *supervision*. A municipality is capable of supervising its employees even if it does not maintain a perpetual record of their every infraction.

Because Edwards has identified no law that requires the City to maintain a "system to identify and track use of force incidents," his supervisory and disciplinary theories can succeed only if he identifies "a pattern of similar constitutional violations."[50] He has not done so. Instead, he points to the "violations" discussed above, plus two others: (1) Oliver, while off-duty and without provocation, "pulled a gun on another driver following a routine traffic accident," and (2) in 2013, Oliver shared a Facebook post which read that "I will never in my life be as good at anything

---

[48] *Id.*

[49] *Henderson*, 51 F.4th at 131 (internal quotation marks and citations omitted).

[50] *Id.*

else as I am at killing people." As above, these incidences lack "similarity and specificity," and so they do not "point to the specific violation in question."[51]

The prior violations that Edwards identifies certainly reflect individual action that is "bad or unwise," [52] but as for the City, they do not amount to "a complete disregard of the risk that a violation of a *particular* constitutional right would follow."[53] Because deliberate indifference is absent, Edwards's supervisory and disciplinary theories cannot succeed, and that means that Edwards cannot satisfy *Monell*'s third element.

## C

Edwards makes a few perfunctory references to other theories of liability, but none comes anywhere near requiring reversal. For example, he states that "[d]eliberate indifference can also be based on a single incident" rather than a pattern. But he does not expound that theory, and he never argues that any of the prior misconduct he alleges can satisfy the single-incident test for deliberate indifference. He also argues that the City had "insufficient hiring" practices, and that it "should not have hired Oliver." But his reply brief concedes that he "does not make a stand-alone negligent hiring claim." Hiring is relevant only if it has a "similarity and specificity" relationship to the unlawful conduct that Edwards complains of.[54] Because that relationship does not exist, Edwards's "hiring" arguments are irrelevant. Finally, he argues that: "When viewed as a whole, the prior incidents involving other officers *plus* Oliver's own violent conduct show a

---

[51] *Peterson*, 588 F.3d at 851 (5th Cir. 2009).

[52] *Id.* (internal quotation marks and citations omitted).

[53] *Liggins*, 52 F.4th at 955 (emphasis added) (alterations adopted) (internal quotation marks and citations omitted).

[54] *Peterson*, 588 F.3d at 851 (emphasis added) (alterations adopted) (internal quotation marks and citations omitted).

pattern of the excessive use of force by Balch Springs officers, from which it is reasonable to infer that the City has a policy of 'shoot first, ask questions later.'" Edwards does not identify any legal support for this "as a whole" theory of liability. On the contrary, a plaintiff cannot establish a pattern based solely on "any and all 'bad' or unwise acts, but rather must point to the specific violation in question."[55] Edwards never meets that hurdle.

## IV

A local government's official, written policy is itself unconstitutional only if it affirmatively allows or compels unconstitutional conduct. The City's policy passes muster under that standard. It does not affirmatively allow officers to use deadly force absent an immediate threat, and it does not affirmatively allow officers to rely on subjective factors when evaluating whether to use deadly force. Likewise, the prior constitutional violations that Edwards relies on are too dissimilar and generalized to establish a pattern. For that reason, Edwards cannot show that the City's training, supervisory, and disciplinary failures (if any) arose from deliberate indifference. In turn, he cannot satisfy *Monell*'s third element.

We AFFIRM.

---

[55] *Id.*